```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

RAMON M. VICTORIA,

    Plaintiff,                CIVIL NO. 13-7587 (NLH)(KMW)

    v.

                                   OPINION

FLUOR ENTERPRISES, INC.,

    Defendant.

**APPEARANCES:**

STEPHEN LEDVA, JR.
MINTZER SAROWITZ ZERIS LEDVA & MEYERS
2070 SPRINGDALE ROAD
SUITE 400
CHERRY HILL, NJ 08003

    *On behalf of Plaintiff*

FANNY ANN FERDMAN
Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10012

    *On behalf of Defendant*

<u>**HILLMAN**</u>, District Judge

    This matter has come before the Court on the motion of Defendant Fluor Enterprises, Inc. for summary judgment on Plaintiff's claims that defendants violated his rights under 42 U.S.C. § 1981, the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, and acted negligently in supervising its employees. Plaintiff contends he was terminated from his employment based on his race and national origin.  For the reasons set forth below,

Fluor's motion will be granted.

**I.    BACKGROUND**

Plaintiff, Ramon Victoria, was born in Santo Domingo, Dominican Republic, and came to the United States in 1979.  See Def.'s L. Civ. R. 5.1 Statement of Undisputed Facts ("SMF") ¶ 15.[1]  He previously worked for Fluor (then known as Daniels) on and off from 1982 to 1992 and from 2005 to 2006, but was laid off due to reductions in force ("RIFs").  SMF ¶ 8 (citing Ferdman Dec., Ex. DD, Pl.'s Dep. 29:16-22; 33:19-22).

Plaintiff was rehired by Fluor in September 2009 as an "Insulator Mechanic Journeyman" at Fluor's Chamber Works location in Deepwater, New Jersey.  SMF ¶¶ 6, 27.  The majority of the 26 insulators working with Plaintiff were of Hispanic descent.  SMF ¶ 32.  Plaintiff testified his direct supervisors, Marino Santocoloma and Alberto DeJesus, were Colombian.  SMF ¶ 32 (citing Pl.'s Dep. 261:11-262:3).

The following chronological history is relevant to Plaintiff's claims.  On October 4, 2011, Plaintiff received a written reprimand for exceeding the number of days he was permitted to be absent within the calendar year.  SMF ¶ 121.  One week later, Plaintiff's brother notified Sandra Donnelly, a Human Resources specialist at Fluor's nearby Edge Moor site, that Plaintiff wanted to speak with

---

[1] All of Defendant's material facts cited by the Court are undisputed.

her.  SMF ¶ 122.

Plaintiff and Donnelly spoke on the phone on October 10 or 13, 2011.[2]  During that call, Plaintiff told Donnelly that he believed the scaffolds at his job site were unsafe and that his supervisors were trying to save money by avoiding scaffold modifications. Ferdman Decl., Ex. Z, Confidential Mem. at 4-5.  Donnelly instructed Plaintiff to inform Dee Smith, the construction manager, of his safety concerns.  Id. at 5.  On October 10, 2011, Donnelly sent an email to Dee Smith and copied Leonard Wallace, the Human Resources manager at Plaintiff's job site (Chamber Works), informing them of her instruction.  That email stated, in pertinent part,

> Dee,
>
> Ramon Victoria has been asking to meet with me regarding issues he is having, however I do not know what the issues are.
>
> I asked him if he has gone through the chain of command (Alberto – then Marino). He said yes and that he wants to speak with me. I told Ramon that he must follow the chain of command and that his next step is to speak with you[.]
>
> Ramon said to me that he feels like he is being discriminated against and that Alberto and Martino are

---

[2] The Court recognizes that the record contains inconsistent dates. For example, the investigative report of Lynn Ray, Fluor's Health Safety and Environment Manager, states that Donnelly first spoke to Plaintiff on the phone on October 13, 2011, but Donnelly's email to Dee Smith is dated two days prior.  In their statement of material facts, the parties agree Plaintiff and Donnelly first spoke on the phone on October 10, 2011.  SMF ¶ 131.  The exact date is not material to the Court's decision.

3

> trying to make him lose his job. He also asked about coming over to Edge Moor, of which I did not give an answer other than I told Ramon that he absolutely needed to follow the chain of command and speak with you.

Id. at 5.

On November 11, 2011, Plaintiff used Fluor's Compliance and Ethics Hotline to report safety violations. SMF ¶ 39. During the call, Plaintiff complained that since August 2011, DeJesus and Santocoloma forced employees to work in unsafe conditions by failing to provide proper modifications to complete job tasks and instructing them to stand on unsafe handrails and pipes instead of providing ladders and other tools. SMF ¶ 40. In response to Plaintiff's hotline complaint, Lynn Ray, Fluor's Health Safety and Environmental ("HSE") manager interviewed Plaintiff. SMF ¶¶ 41, 42. Ray asked Plaintiff about his allegations of harassment and discrimination he made to Donnelly. Plaintiff responded that he was no longer getting overtime and was reassigned from jobs when he asked for the scaffolding to be modified. Id. Ray further reported that Plaintiff told him that the people who replaced him on a job were taller and had a longer reach which facilitated getting the job done without scaffold modifications. The interview notes do not indicate that Plaintiff tied his feelings of harassment and discrimination previously reported to Donnelly as race or national origin discrimination. Ray ultimately concluded Plaintiff's hotline

4

allegations were not substantiated. SMF ¶¶ 41, 42.

On December 16, 2011, Plaintiff was laid off as part of a RIF along with 14 other individuals, two of which were also insulators (Angel Martinez and Luis Rijo). SMF ¶ 7; Ferdman Decl. Ex. X, List of Laid Off Employees. On January 8, 2012, less than a month after Plaintiff was terminated, he submitted a letter to the Occupational Safety and Health Administration (OSHA) citing various safety violations by Fluor including forcing employees to stand on pipes and work on unsafe ladders. SMF ¶ 52. All of Plaintiff's OSHA allegations concerned safety and did not allege any type of discrimination or retaliation based on race or national origin. SMF ¶ 54.

On January 18, 2012, OSHA responded that the case was closed on the grounds that any hazardous condition had been corrected. SMF ¶ 57. OSHA also informed Plaintiff that of the 14 people laid off between December 14-16, 2011, eight were Caucasian. SMF ¶¶ 59, 60. On August 21, 2012, OSHA notified Plaintiff that it had completed its investigation into Plaintiff's allegations that Fluor had laid off Plaintiff in retaliation for reporting safety and health issues to management and found that the preponderance of the evidence indicated that the protected activity was not a contributing factor in Plaintiff's termination. SMF ¶ 62. The letter further notified

5

Plaintiff that he could file an appeal but Plaintiff never did. SMF ¶¶ 63, 64.

On December 16, 2012, Plaintiff filed a complaint alleging unlawful employment practices under 42 U.S.C. 1981, employment discrimination under NJLAD, N.J.S.A. 10:5-12, and negligence.

## II. JURISDICTION

When Defendant removed Plaintiff's complaint to this Court, the complaint contained both federal and state claims. As a result, this Court had jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), which provides in relevant part, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

6

the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by

7

the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## IV. ANALYSIS

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens...."  42 U.S.C. § 1981.  The statute covers private acts of racial discrimination. Runyon v. McCrary, 427 U.S. 160, 170, 96 S.Ct. 2586, 2594, 49 L.Ed.2d 415, 424 (1976).  "A successful section 1981 claim requires proof of intentional discrimination."  Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 126 (3d Cir. 1990) (citations omitted).  The standards applied to claims arising under § 1981 and the NJLAD are the same. Marley v. CORT Furniture Rental Corp., No. 06-4926, 2008 WL 4066345, at *2 n.4 (D.N.J. Aug. 26, 2008) aff'd, 348 F. App'x 798 (3d Cir. 2009) (citing Hutchins v. United Parcel Service, Inc., 197 Fed. Appx. 152, 156 (3d Cir. 2006)).

A plaintiff may prove discriminatory intent with direct evidence or indirect evidence.  Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267–68 (3d Cir. 2010) (applying direct evidence test

8

in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to lending discrimination claims brought under § 1981).

Plaintiff does not offer direct evidence of discriminatory intent. See Anderson, 621 F.3d at 269 (finding requirements for direct evidence to be a "high hurdle" and that direct evidence must satisfy two requirements: (1) the evidence must be strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the defendant's decision; and (2) the evidence must be connected to the decision being challenged by the plaintiff and must be made at a time proximate to the challenged decision and by a person closely linked to that decision). Rather, plaintiff appears to rely on indirect evidence using the McDonnell Douglas burden-shifting framework.

Courts interpreting § 1981 claims apply the same McDonnell Douglas burden-shifting analysis applied in Title VII claims. Anderson, 621 F.3d at 273 (applying burden-shifting framework in a § 1981 lending discrimination claim); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 531 (D.N.J. 2000) (applying burden-shifting framework in a § 1981 employment discrimination claim).

9

The burden-shifting framework is a three step process. First, the plaintiff must establish a prima facie case of discrimination. Anderson, 621 F.3d at 270-71. If a plaintiff makes out a prima facie case, then the "burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action." Id. at 271. (citing Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 n.2 (3d Cir. 1998)). If the defendant meets its burden, then the burden of production shifts back to the plaintiff, who must show by a preponderance of the evidence that the defendant's explanation is pretextual. Id. "[T]hroughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

### A. Plaintiff's Claims of Discrimination

As an initial matter, it is unclear whether Plaintiff has abandoned his claims of racial discrimination under § 1981. Plaintiff's complaint references "racial discrimination" but his opposition brief focuses solely on his allegations of discrimination based on his national origin. Despite Plaintiff's focus on national origin discrimination, Plaintiff concedes in his opposition brief that "a claim based solely on national origin would be an insufficient basis for a § 1981 claim[.]" Pl.'s Opp.

10

Br. at 16 (citing Funayama v. Nichia Am. Corp., No. 08-5599, 2009 WL 1437656 (E.D. Pa. May 21, 2009)).

The Court agrees with Plaintiff that his national origin claim pursuant to § 1981 fails as a matter of law.  In Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987), the Supreme Court found that § 1981 protects against discrimination based on race, ancestry, and ethnic characteristics.  While the Third Circuit has not decided whether discrimination based on national origin may be subsumed within the category of "ancestry" the majority of courts in the Third Circuit have found that national origin is not protected by § 1981.  Wesley v. Palace Rehab. & Care Ctr., L.L.C., 3 F. Supp. 3d 221, 233 (D.N.J. 2014) (citing Funayama, 2009 WL 1437656, at *4 (collecting cases)).  Accordingly, Fluor's motion for summary judgment on Plaintiff's national origin discrimination claim under § 1981 is granted.

The Court next considers Plaintiff's racial discrimination claim under § 1981 and claim of discrimination as a result of "Mr. Victoria's complaints and his national origin" under NJLAD.  Compl. ¶ 40.  To establish a prima facie case of unlawful employment discrimination under § 1981 or NJLAD a plaintiff must show that: (1) s/he belongs to a protected class; (2) s/he was qualified for the position s/he sought to retain or attain; (3)

11

s/he was subjected to an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference that the adverse action was taken on account of his or her membership in the protected class. Jackson v. Temple Univ. Hosp., Inc., 501 F. App'x 120, 122, 123 n.2 (3d Cir. 2012) (§ 1981); McConnell v. State Farm Mut. Ins. Co., 61 F. Supp. 2d 356, 362 (D.N.J. 1999) (NJLAD).

To satisfy the fourth element of the prima facie case where the basis of a plaintiff's claim is an employment termination in the context of a RIF, the plaintiff must present evidence that similarly situated persons outside of his or her protected class were retained. Jackson, 501 F. App'x at 123 (citing In Re: Carnegie Ctr. Assocs., 129 F.3d 290, 294-95 (3d Cir. 1997)); see also Bratek v. TD Bank, N.A., No. 11-3049, 2012 WL 603299, at *5 (D.N.J. Feb. 22, 2012) (plaintiffs failed to establish a RIF prima facie case of discrimination under the NJLAD where the complaint was silent on the issue of whether the retained workers were "similarly situated" to plaintiffs); Spagnoli v. Brown & Brown Metro, Inc., No. 06-414, 2007 WL 2362602, at *6 (D.N.J. Aug. 15, 2007) (granting summary judgment where plaintiff did not show she was terminated while her employer retained others outside her protected class).

12

Fluor contends that Plaintiff has failed to establish the fourth prong of a RIF prima facie case of discrimination. The Court agrees. Plaintiff has failed to provide evidence that similarly situated persons outside his protected class were retained following the RIF. In Jackson, the Court found that plaintiff did not establish a prima facie case of unlawful employment discrimination where she produced a list of retained employees but did not establish that any of those employees were similarly situated. Jackson, 501 F. App'x at 123. Plaintiff, likewise, has made no such showing that persons outside his protected class were retained or that those retained were similarly situated. In fact, the undisputed record demonstrates the opposite is true. Plaintiff testified that there were a number of Dominican insulators who continued working at his site after he was terminated. SMF ¶ 33. Specifically, Plaintiff testified that of the 26 insulators at least four were Dominican. None of the four coworkers identified by Plaintiff as Dominican were terminated in the RIF with Plaintiff. Ferdman Decl., Ex. X; see also Pl.'s Dep. 261-11:23.[3] Additionally, Fluor has produced

---

[3] In his opposition brief, Plaintiff claims (without affidavit) that the two other insulators terminated were also Dominican. In his deposition, Plaintiff only testified that Reyes was Dominican. SMF ¶ 76. However, what is relevant is who was retained not who was terminated.

13

an affidavit from one of Plaintiff's supervisors which avers, "Many [of the insulators], like Mr. Victoria, are from the Dominican Republic, and are currently working with me with the new contractor on the Dupont Chambers Works site and have been working with me since we were employees for Fluor." Santocoloma Aff. ¶ 15. Accordingly, because Plaintiff has failed to present evidence that similarly situated persons outside of his protected class were retained, Plaintiff's discrimination claims under § 1981 and the NJLAD fail as a matter of law. As such, Fluor's motion for summary judgment is granted.

**B. Plaintiff's Retaliation Claim**

To establish a claim for retaliation a plaintiff must prove that: (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (§ 1981); Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001) (NJLAD).

Fluor argues that Plaintiff did not engage in protected activity under § 1981 or the NJLAD because all of Plaintiff's complaints centered on safety and not discrimination. The NJLAD

14

makes it illegal for an employer to terminate an employee on the basis of race, national origin, sex and other protected characteristics.  N.J.S.A. 10:5-12.  Plaintiff makes no argument in opposition to Fluor's contention that his retaliation claims fail.  However, in Plaintiff's complaint he alleges that Fluor terminated him in retaliation for his complaints about "racial discrimination and harassment."  Compl. ¶ 34.

It is undisputed that the majority of Plaintiff's complaints, such as his complaint to OSHA and hotline complaint concerned safety.  Safety complaints are insufficient to give rise to § 1981 and NJLAD claims.  Stouch v. Twp. Of Irvington, 354 F. App'x 660, 667 (3d Cir. 2009) (plaintiff's complaint to OSHA was not protected activity under the ADA or NJLAD where the complaint centered on the conditions of his workplace and not disability discrimination); Davis v. Supervalu, Inc., No. 13-414, 2013 WL 1704295, at *4 (D.N.J. Apr. 19, 2013) (dismissing claim of retaliation under the NJLAD because the alleged protected activity concerned worker's compensation and not a discriminatory employment practice).

Section 1981 prohibits discrimination based on race, alienage, ancestry, or ethnic characteristics.  See Saint Francis Coll., 481 U.S. at 613. "In order to state a claim for retaliation

15

under § 1981, the 'protected activity' must relate to discrimination prohibited by § 1981, not just under any statute." Doe v. Sizewise Rentals, LLC, No. 09-3409, 2012 WL 1191944, at *5 (D.N.J. Apr. 10, 2012) aff'd, 530 F. App'x 171 (3d Cir. 2013).

Aside from complaints regarding safety, the only other evidence of a racial or national origin complaint is reflected in Donnelly's email notes which state that Plaintiff told her he "feels like he's being discriminated against."

It is unclear to the Court what Plaintiff meant when he told Donnelly that he felt discriminated against.  Certainly he did not reference his race or national origin.  When asked about his allegations of "harassment and discrimination" during a later interview, Plaintiff stated that he was not getting overtime and was reassigned jobs when he asked for the scaffolds to be modified. Ferdman Decl., Ex. W, Fluor Hotline Phone Complaint at 4.  Nonetheless, the Court must construe all factual questions in favor of Plaintiff.  Thus, the Court will assume Plaintiff engaged in protected activity when he complained to Donnelly that he felt discriminated against.

Because the parties do not dispute that Plaintiff was terminated, the Court next considers whether there was a causal connection between his participation in the protected activity and

16

the adverse employment action.  The Third Circuit focuses on two main factors to establish the causal link necessary for retaliation: timing and evidence of ongoing antagonism.  Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)).  "[T]he timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.  Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 n.9 (3d Cir. 2003)

    Plaintiff complained to Donnelly on or about October 10, 2011, and was terminated on December 16, 2011.  This time frame by itself is insufficient to establish a discriminatory inference.  See Carlson v. Twp. of Lower Alloways Creek, 452 F. App'x 95, 101 (3d Cir. 2011) (one month period between grievance and termination alone was insufficient to establish a discriminatory inference); McCloud v. United Parcel Serv., Inc., 328 F. App'x 777, 781 (3d Cir. 2009) (one month after filing discrimination complaint and termination was not "particularly suggestive").  Further, there is no evidence of ongoing antagonism regarding race or national origin discrimination sufficient to give rise to an inference that he was terminated for complaining about discrimination to Donnelly.

17

Alternatively, even if Plaintiff established causation, he cannot establish Fluor's legitimate, nondiscriminatory reason for the RIF was pretextual.  Plaintiff concedes (see SMF ¶ 70) that there are three bases for his allegation that Flour engaged in a course of discriminatory conduct by terminating employees of Dominican descent: 1) Dominicans were given write-ups for things they did not agree on; 2) DeJesus gave Plaintiff's uncle, Fermin Matos, the nickname Ferminol, which is the name of a medication; and 3) Santocoloma stated that he did not know Dominicans could use a calculator when he saw Plaintiff using one.  SMF ¶ 70.  However, Plaintiff admitted in his deposition that he does not know why any other individuals were written up because he "wasn't there."  SMF ¶ 71 (citing Pl.'s Dep. 269:8-270:20).  Plaintiff further testified he did not know what the name Ferminol meant or why the nickname was discriminatory.  SMF ¶ 72 (citing Pl.'s Dep. 266:17-267:20).  Finally, the single stray remark made by Santocoloma, on an unknown date, is of little probative value.  Muhammad v. Day & Zimmermann NPS, No. 09-01670, 2011 WL 3036627, at *6 (D.N.J. July 25, 2011) ("[S]tray remarks [] are insufficient for a fact-finder to reasonably disbelieve [the employer's] articulated reason for terminating Plaintiff.") (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91

18

L.Ed.2d 202 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").  As Plaintiff has not demonstrated any "weakness, implausibilities, inconsistencies, incoherencies, or contradictions" in Fluor's stated reason so that this Court could conclude that Fluor's explanation is "unworthy of credence," summary judgment will be granted for Fluor on Plaintiff's retaliation claim.  Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

**C. Plaintiff's Negligence Claim**

In Plaintiff's negligence claim he alleges that Fluor failed to supervise its employees to prevent them from committing "discriminatory and unlawful practices."  Compl. ¶ 48. Plaintiff's negligence claim, which relies on the same facts as his statutory claims, is preempted.  Bull v. Target Corp., No. 14-6838, 2015 WL 1266792, at *3 (D.N.J. Mar. 17, 2015) ("The New Jersey Appellate Division has held that the New Jersey State Legislature intended for the NJLAD to "encompass all those claims and damages previously available at common law[.]") (citing Dale v. Boy Scouts of Am., 308 N.J. Super. 516, 543 (N.J. App. Div. 1998), aff'd, 160 N.J. 562, 734 (1999), rev'd on other grounds,

19

530 U.S. 640 (2000)).  Further, courts in this district have found that the NJLAD provides "the exclusive remedy for common law claims based on the same facts."  Id. (citing cases). Accordingly, summary judgment is granted for Fluor on Plaintiff's negligence claim.

**V.   CONCLUSION**

For the foregoing reasons, Fluor entitled to summary judgment in their favor on all of Plaintiff's claims against it.[4]  An appropriate Order will be entered.


Date: October 2, 2015                           s/ Noel L. Hillman
                                             NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

---

[4] Fluor, in its reply brief, cites a sundry of Local Rule violations within Plaintiff's papers.  Fluor asks the Court to deem particular facts admitted and strike certain submissions. However, the Court need not address these issues.  Without granting Fluor the remedies it seeks the Court finds there are no genuine disputes of material fact and Fluor is entitled to summary judgment on all of its claims.